# United States District Court
## for the Northern District of Oklahoma

Case No. 19-cv-554-JDR-JFJ

Bo Zou,

*Plaintiff,*

*versus*

Linde Engineering North America, Inc.,

*Defendant.*

## OPINION AND ORDER

In 2018, Linde Engineering North America, Inc. hired Plaintiff Bo Zou, a 54-year-old Chinese American. Less than a year later, Mr. Zou was laid off. Mr. Zou now claims that Linde (1) discriminated against him based on both his race and his age, in violation of Title VII, 42 U.S.C. § 2000e *et seq.*, and the Age Discrimination in Employment Act of 1964, 29 U.S.C. §§ 621-34 and (2) retaliated against him by giving him more work and selecting him for layoff in violation of both Title VII and the ADEA. *See* Dkt. 13 at 2 (¶ 4).[1] Both parties have moved for summary judgment. Dkts. 231, 232. The motions have been fully briefed, and the Court held a hearing on the motions on December 18, 2024. Dkt. 247. For the reasons discussed below, Mr. Zou's motion for summary judgment is denied, and Linde's motion for summary judgment is granted.

---

[1] All citations utilize CMECF pagination.

No. 19-cv-554

I.

Linde specializes in designing and building large-scale chemical plants for the production of industrial gases and the processing of natural gas. Dkt. 232-1 at 2-3 (¶ 4). Prior to Mr. Zou's employment with Linde, Linde hired two piping designers, Dustin Duncan and Kenny Sharp, both of whom are Caucasian males under the age of forty. Dkts. 231 at 2 (¶ 7); 232-1 at 4 (¶ 12). By August of 2018, both Mr. Duncan and Mr. Sharp had been promoted to piping design engineers. Piping design engineers assist team leaders and project personnel during the layout and design aspects of project execution; the position does not require an engineering degree. Dkt. 232-1 at 4 (¶ 10).

On October 1, 2018, Linde hired Mr. Zou, who was 54 years old at the time, to fill the sole piping engineer position in its Tulsa office. Dkt. 232-1 at 3 (¶ 7). Mr. Zou, who has a master's degree in mechanical engineering, met all qualifications for the position. Dkt. 231 at 1-2 (¶¶ 2, 5). Mr. Zou reported directly to Jerry Gump, Linde's manager of engineering. Dkt. 232-1 at 3-4 (¶ 9). The piping engineer position, which typically requires an engineering degree, is responsible for the execution of projects across all phases and approaches projects from a broad technical perspective. *Id.* Before Mr. Zou filled the position, projects from the Tulsa office requiring a piping engineer were completed by piping engineers in other offices. Dkt. 232-1 at 4 (¶ 13). Mr. Zou maintains that, from the beginning of his employment with Linde, he was treated differently than Mr. Duncan and Mr. Sharp.

On May 6, 2019, Mr. Zou complained to Aaron Watson, Linde's human resources department supervisor, that Mr. Gump was letting Mr. Sharp perform Mr. Zou's job duties, that Mr. Zou was being excluded from specification meetings, that Mr. Zou was only listed as an "optional" attendee for other meetings, and that Mr. Gump acknowledged Mr. Sharp in a meeting with a cash award for his hard work after Mr. Sharp had made a mistake. Dkts. 232 at 8-9 (¶ 11); 236 at 7 (¶ 11). The human resources department advised Mr. Zou to discuss the issues with Mr. Gump, and he did so. Dkt. 236 at 7 (¶

2

11). Following the discussion, Mr. Zou was invited to attend the specification meetings. *Id.*

Four days after his initial complaint to HR, Mr. Zou sent a formal written letter detailing his complaints to Linde vice president David Close. Dkt. 231 at 3 (¶ 16), 45. In the letter, Mr. Zou called into question Mr. Gump's fairness and ethics in performing his job as a supervisor. Dkt. 231 at 45-47. In addition to his concerns raised with HR, Mr. Zou claimed that Mr. Gump cancelled some of his trainings and asked Mr. Zou's roommate and coworker, Bob Wong, to monitor him and search his room at their shared home. *Id.*

After investigating the complaints, Linde provided Mr. Zou with a written summary of their investigation and findings based on his written complaint. Dkt. 232-8 at 2. Mr. Watson also sent a formal letter to Mr. Zou informing him that no evidence was found to corroborate his allegations and that the investigation into his complaint was closed. Dkt. 232-9 at 2. Becky Ford with Linde's HR department initially scheduled a follow-up meeting with Mr. Zou for July 11, 2019, to discuss the complaint. Dkt. 232-7 at 3. But on July 3, 2019, Mr. Zou told Ms. Ford that he had spoken with Mr. Gump, and the issues about his job duties had been resolved. *Id.* at 2. Mr. Zou stated that, so long as Ms. Ford had read his complaint, he "may cancel the meeting." *Id.* He stated that he never asked Linde to investigate his complaint but instead wanted management to pay attention to the issues he had identified. *Id.*

Ms. Ford sent Mr. Zou an email on July 11, 2019, confirming that she was cancelling the follow-up meeting. Dkt. 232-10 at 2. Mr. Zou responded that he did not accept the "incorrect" investigation results but reiterated that he did not object to cancelling the meeting so long as she had read his complaint. *Id.* On August 7, 2019, Linde laid off Mr. Zou as part of a company-wide reduction in force. Dkt. 236 at 65.

No. 19-cv-554

II.

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Federal Rule of Civil Procedure 56(a). A material fact is one that "might affect the outcome of the suit under the governing law," and a dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In deciding a motion for summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249. "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the plaintiff." *Id.* at 252. Further, the "evidence must be based on more than mere speculation, conjecture, or surmise." *Rice v. United States*, 166 F.3d 1088, 1092 (10th Cir. 1999) (citing *Brown v. Reardon*, 770 F.2d 896, 904 (10th Cir. 1985)). "Cross-motions for summary judgment are to be treated separately; the denial of one does not require the grant of another." *Buell Cabinet Co. v. Sudduth*, 608 F.2d 431, 433 (10th Cir. 1979) (citing *SEC v. American Commodity Exchange, Inc.*, 546 F.2d 1361, 1365 (10th Cir. 1976)).

III.

Mr. Zou argues that he is entitled to summary judgment on his claims because he was treated differently than other younger, Caucasian employees. Dkt. 231 at 5. He also claims that he was laid off because he was Asian, over the age of forty, and for filing a complaint with HR about the disparate treatment. *Id*. Linde argues that it is entitled to summary judgment because Mr. Zou cannot establish a prima facie case of employment discrimination under any theory and has no evidence that Linde's legitimate, non-discriminatory reason for laying him off—a reduction in force—is pretext. Dkt. 232 at 13.

No. 19-cv-554

A.

The Court first considers Mr. Zou's race[2] and age[3] discrimination claims. At the summary judgment stage, both race and age discrimination claims are evaluated under the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973).[4] *See Carney v. City & Cty. of Denver*, 534 F.3d 1269, 1273 (10th Cir. 2008); *Beaird v. Seagate Tech., Inc.*, 145 F.3d 1159, 1165 (10th Cir. 1998). Under that framework, Mr. Zou has the initial burden of establishing a prima facie case of discrimination. *McDonnell Douglas Corp.*, 411 U.S. at 802. If he establishes a prima facie case, Linde must then set forth a legitimate, nondiscriminatory reason for its decision the alleged disparate treatment and for including Mr. Zou in the RIF. *Id.* If Linde satisfies this burden, it then falls back to Mr. Zou to demonstrate that the proffered justification is pretextual. *Laul v. Los Alamos Nat'l Lab'ys*, 765 F. App'x 434, 440 (10th Cir. 2019)[5]; *Anaeme v. Diagnostek, Inc.*, 164 F.3d 1275, 1278-79 (10th Cir. 1999).

For purposes of these motions, the Court assumes Mr. Zou has established a prima facie case of race and age discrimination with respect to the only adverse employment action at issue here—the termination of Mr. Zou's employment.[6] The burden shifts to Linde to offer proof of a facially

---

[2] Title VII, 42 U.S.C. § 2000e *et seq.*, prohibits employers from discriminating against an individual because of the individual's race, color, religion, sex, or national origin. *See* 42 U.S.C. § 2000e-2(a).

[3] The Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621-34, prohibits employers from discriminating against an individual because of his or her age. *See* 29 U.S.C. § 623(a)(1).

[4] Mr. Zou has not presented any evidence of direct discrimination. The Court will utilize the standard for circumstantial or indirect discrimination. *See, e.g., Ramsey v. City & Cty. of Denver*, 907 F.2d 1004, 1007-08 (10th Cir. 1990).

[5] Although unpublished and, therefore, not precedential, this and other unpublished decisions may be cited for their persuasive value. 10 Cir. R. 32.1(A).

[6] To the extent Mr. Zou claims Linde discriminated against him in other ways, he has failed to identify any other adverse employment actions or activities that give rise to "a significant change in employment status, such as hiring, firing, failing to promote,

5

No. 19-cv-554

nondiscriminatory reason for Mr. Zou's termination. At this stage, Linde's burden is "exceedingly light"; to meet it, Linde need only produce admissible evidence that would allow a jury to conclude that it was not motivated by discriminatory animus. *Anaeme*, 164 F.3d at 1279 (citation and quotation marks omitted).

Linde asserts that Mr. Zou was one of eighteen Tulsa employees laid off due to a reduction in force "driven by external business factors, a shift in Linde's focus, and projected future work requirements." Dkts. 232-1 at 5-6 (¶¶ 21-23); 235 at 1. Mr. Zou was selected for the RIF because "a piping engineer focused on natural gas was no longer needed in the Tulsa office due to Linde's movement away from natural gas." Dkt. 232-1 at 6 (¶ 23). The implementation of a RIF is a facially nondiscriminatory reason to lay off an employee. *See, e.g., Beaird*, 145 F.3d at 1168. Because Linde has offered a facially nondiscriminatory reason, the burden shifts back to Mr. Zou to produce sufficient evidence to permit a factfinder to conclude that Linde's stated reason is pretextual. *Plotke v. White*, 405 F.3d 1092, 1102 (10th Cir. 2005); *Salguero v. City of Clovis*, 366 F.3d 1168, 1176 (10th Cir. 2004).

"A plaintiff demonstrates pretext by showing either that a discriminatory reason more likely motivated the employer or that the employer's proffered explanation is unworthy of credence." *Stinnett v. Safeway, Inc.*, 337 F.3d 1213, 1218 (10th Cir. 2003) (quoting *Rea v. Martin Marietta Corp.*, 29 F.3d 1450, 1455 (10th Cir. 1994)). Pretext can be established by demonstrating "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in [Linde's] proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence." *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir. 1997) (citation and quotation marks omitted). But "'mere conjecture' that [Linde's] explanation is pretext is not a sufficient basis to deny a motion for summary judgment." *Green v. Paragon*

---

reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *See, e.g., Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998).

*Films, Inc.*, 814 F. Supp. 2d 1174, 1182 (N.D. Okla. 2011) (quoting *Branson v. Price River Coal Co.*, 853 F.2d 768, 772 (10th Cir. 1998)).

Pretext in the context of a RIF may be demonstrated by evidence that Mr. Zou's "termination was inconsistent with the RIF criteria articulated by [his] employer; a claimed business judgment so idiosyncratic or questionable that a factfinder could reasonably find that it is pretext for illegal discrimination; the employer's inconsistent application of the RIF criteria; or other procedural irregularities in the RIF process." *Eke v. CaridianBCT, Inc.*, 490 F. App'x 156, 164 (10th Cir. 2012) (internal quotation and citation omitted). Further evidence of pretext "may include the following: prior treatment of plaintiff; the employer's policy and practice of employment regarding age (including statistical data); disturbing procedural irregularities …; and the use of subjective criteria." *Berry v Airxcel, Inc.*, No. 20-1362-KHV, 2022 WL 2952511, at *7 (D. Kan. July 26, 2022) (citing *Simms v. Okla. ex rel. Dep't of Mental Health & Substance Abuse Servs.*, 165 F.3d 1321, 1328 (10th Cir. 1999)).

Mr. Zou's pretext arguments are many and various. He first argues that Mr. Gump treated him differently than the younger, Caucasian employees, Mr. Sharp and Mr. Duncan. Dkt. 231 at 5. Second, Mr. Zou offers his subjective belief that Linde treated him differently than other employees. *Id.* at 6, 13-14. Third, Mr. Zou claims that his position was not actually eliminated. *Id.* at 10-12. Fourth, Mr. Zou contends that he should have been transferred to a vacant engineering position in another department. *Id.* at 12-13. And finally, Mr. Zou argues that Linde's proffered reason is pretext because everyone laid off under Mr. Gump was over the age of forty, tenure was not a given reason at the time of the layoff, and Linde did not ultimately change its focus away from natural gas. Dkt. 241 at 4, 8-9.

1.

Before turning to the merits of Mr. Zou's arguments, the Court first addresses Mr. Zou's evidentiary challenge to the declaration of Deana Hoey [Dkt. 232-1], a member of Linde's HR department. *Id.* at 1 (¶ 2). The

7

No. 19-cv-554

declaration supports Linde's reasonings for the RIF and why Mr. Zou was ultimately selected. Mr. Zou argues that the declaration is inadmissible because it contradicts other evidence and should be considered hearsay.[7] Dkt 236 at 1. The credibility of Linde's proffered reason is certainly at issue. But the explanation is supported by Ms. Hoey's declaration and is not facially pretextual.

To challenge Linde's reasons, Mr. Zou cannot simply state that Ms. Hoey's declaration is incredible. Instead, he must present evidence which "undermine[s] the employer's credibility to the point that a reasonable jury could not find in its favor." *Jaramillo v. Colo. Judicial Dep't*, 427 F.3d 1303, 1310 (10th Cir. 2005) (citing *Russell v. Acme-Evans Co.*, 51 F.3d 64, 70 (7th Cir. 1995)). Mr. Zou cannot rely solely on his attack of Ms. Hoey's credibility to withstand Linde's motion for summary judgment. *See, e.g., Nat'l Am. Ins. Co. v. Am. Re-Ins. Co.*, 358 F.3d 736, 742 (10th Cir. 2004) ("Standing alone, attacks on the credibility of evidence offered by a summary judgment movant do not warrant denial of a summary judgment motion."). Doubts as to Ms. Hoey's credibility "must relate to a material issue in order to undermine a grant of summary judgment." *Eke v. CaridianBCT, Inc.*, 490 F. App'x 156, 168 (10th Cir. 2012) (citing *Sorbo v. United Parcel Serv.*, 432 F.3d 1169, 1176 (10th Cir. 2005)).

Mr. Zou fails to raise anything more than generalized credibility challenges, and he presents no evidence to contradict Linde's evidence. Mr. Zou generally disputes almost all of Ms. Hoey's statements based on his own perception of the facts. For example, he states that "Deana Hoey should be American Caucasian, rather than American Indian. The fact is inadmissible." Dkt. 236 at 19. Mr. Zou has not provided any evidence that Ms. Hoey is not

---

[7] The Court notes that Mr. Zou's objection to hearsay does not necessarily preclude the Court from considering Linde's evidence at the summary judgment stage. *See Argo v. Blue Cross & Blue Shield of Kans., Inc.*, 452 F.3d 1193, 1199 (10th Cir. 2006) (indicating that evidence that would be inadmissible at trial may be considered at summary judgment if the evidence could ultimately be presented in non-hearsay form).

No. 19-cv-554

Native American.[8] Further, Mr. Zou does not identify any inconsistencies by Ms. Hoey as to any material fact. In fact, he points to no facts at all that would put Ms. Hoey's statements legitimately in question. "This is nothing more than a bare attack on the credibility of a summary judgment witness's testimony, which is not sufficient, standing alone, to avoid summary judgment." *Eke*, 490 F. App'x at 169 (citing *Nat'l Am. Ins. Co.*, 358 F.3d at 742). The Court will consider Ms. Hoey's declaration.

2.

As to Mr. Zou's first pretext argument, he believes that Mr. Gump treated younger, Caucasian employees more favorably by allowing them to perform his job duties, attend meetings he should have been invited to, and failing to punish Mr. Sharp for a mistake in his work product. The Tenth Circuit has recognized that a plaintiff may establish pretext by showing that "the employer 'treated [the plaintiff] differently from other similarly-situated employees who violated work rules of comparable seriousness' in order to show that the employer failed to follow typical company practice in its treatment of the plaintiff." *Swackhammer v. Sprint/United Mgmt. Co.*, 493 F.3d 1160, 1168 (10th Cir. 2007) (quoting *Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1230 (10th Cir. 2000)). An employee is similarly situated if he "deals with the same supervisor and is subject to the 'same standards governing performance evaluation and discipline.'" *Kendrick*, 220 F.3d at 1232 (quotation

---

[8] At the motion hearing, the Court asked Mr. Zou what evidence he had to dispute Ms. Hoey's declaration that she is Native American. He stated that the only basis for his dispute was the color of Ms. Hoey's skin and that she had never told him she was Native American. Mr. Zou then filed a document titled "Plaintiff's Supplemental Clarifications to Plaintiff's Dispute About Deana Hoey's Race" after the hearing. Dkt. 248. In the document, Mr. Zou states that Linde offered the fact that Ms. Hoey is Native American for the first time in the declaration "without evidence." *Id.* at 2. According to Mr. Zou, the fact is inadmissible because Linde did not provide Ms. Hoey's certificate of degree of Indian blood. *Id.* But evidence contained in a declaration need only be "based on personal knowledge and must set forth facts that would be admissible in evidence." *Ellis v. J.R.'s Country Stores, Inc.*, 779 F.3d 1184, 1201 (10th Cir. 2015). Whether Ms. Hoey is Native American certainly falls within her own personal knowledge and is a fact she could testify to at trial.

9

and citation marks omitted). "Work histories, company policies applicable to the plaintiff and the comparator, and other relevant employment circumstances should be considered when determining whether employees are similarly situated." *Green v. New Mexico*, 420 F.3d 1189, 1194 (10th Cir. 2005) (citing *Kendrick*, 220 F.3d at 1232). Mr. Zou has failed to present evidence that the allegedly favored employees are similarly situated. *See Riggs v. AirTran Airways, Inc.*, 497 F.3d 1108, 1121 n.4 (10th Cir. 2007) (holding that the plaintiff has the burden to produce evidence that employees are similarly situated).

Mr. Duncan and Mr. Sharp are piping design engineers, not piping engineers. Dkts. 231 at 3 (¶ 14); 235 at 7. The evidence shows that these roles are materially different. Mr. Duncan and Mr. Sharp also have different educational, professional, and work experience than Mr. Zou. Dkt. 235 at 7-8. It is undisputed that Mr. Duncan, Mr. Sharp, and Mr. Zou worked under Mr. Gump, but Mr. Duncan and Mr. Sharp held different positions and had been employed at Linde longer than Mr. Zou. Linde provides evidence that tenure was a factor in Linde's decision to select employees for the RIF. *Id.* at 8. There is no evidence in the summary judgment record contradicting Linde's evidence; thus, the Court finds that Mr. Duncan's and Mr. Sharp's tenure and different position is sufficient to distinguish them from Mr. Zou. *See Brunker v. Schwan's Home Serv., Inc.*, 583 F.3d 1004, 1010 (7th Cir. 2009) (experience and education are relevant factors when determining if employees are similarly situated); *Williams v. Carolinas Healthcare Sys.*, No. 3:10-CV-232-GCM, 2011 WL 1131087, at *3 (W.D.N.C. Mar. 25, 2011) (same). Mr. Zou has failed to produce any evidence of a similarly situated employee that was treated more favorably than him and which would lead to an inference of pretext. *See Riggs*, 497 F.3d at 1121 n.4 (holding that the plaintiff has the burden to produce evidence that employees are similarly situated to support a pretext argument that the similarly situated employee was treated more favorably). Accordingly, Mr. Gump's treatment of Mr. Duncan or Mr. Sharp is not sufficient

No. 19-cv-554

evidence upon which a reasonable jury could determine that Linde's reason is pretext.

3.

Mr. Zou also alleges that Linde's ongoing disparate treatment is evidence of Linde's animus toward him, which would indicate that the RIF was pretext for terminating Mr. Zou's employment. In support, he claims that several trainings he was set to attend were cancelled and not rescheduled. Dkt. 231 at 6. He also provides evidence that the Tulsa Linde employees threw a birthday party for Mr. Gump and another employee, but did not throw a party for Mr. Zou or give him a birthday card on his birthday. *Id.* at 14; 102-08. As to the trainings, Linde maintains that "[a] training or two might have been cancelled due to conflicts and/or lack of participation; this would affect multiple employees and would not be isolated to only Zou." Dkt. 232-1 at 3 (¶ 8). And as to the birthday celebrations, Mr. Zou has not presented any evidence indicating whether the parties were thrown for every Linde employee or whether the people responsible for the parties and cards even knew when Mr. Zou's birthday was.

The evidence cited does not support a conclusion of race or age-based animus. Further, there is no evidence to connect those decisions to Linde's selection of Mr. Zou for the RIF. *See, e.g., Eke v. CaridianBCT, Inc.*, 490 F. App'x 156, 168 (10th Cir. 2012) (finding that the plaintiff failed to provide sufficient evidence that the defendant's proffered reason was pretext because the plaintiff failed to "connect any of her specific examples of alleged discrimination to [her supervisor's] decision to eliminate her job"). A plaintiff's opinion that discrimination is pervasive alone cannot establish pretext. *Beaird v. Seagate Technology, Inc.*, 145 F.3d 1159, 1170 (10th Cir. 1998). The evidence presented would not permit a reasonable jury to conclude that Mr. Zou's perceived disparate treatment was pretext for Linde's proffered reasoning.

4.

Next, Mr. Zou argues that Linde's offered reason is pretext because his position was not in fact eliminated but was instead transferred to Mr. Duncan and Mr. Sharp. Dkt. 231 at 10-12. Prior to the RIF, Mr. Zou was working on a project with a September 30, 2019, deadline and was about to begin another project that required the work of a piping engineer. *Id.* at 10-11. Mr. Zou states that Linde simply eliminated his job title, rather than his actual job, and the work he had been doing was then transferred to Mr. Duncan and Mr. Sharp. *Id.* at 11. Linde maintains that, after the RIF, the Tulsa office did not hire another piping engineer, and the Tulsa office ultimately closed in October of 2021. Dkt. 235 at 9-10. Any work that required a piping engineer was handled by a piping engineer in another Linde office. *Id.*

The Tenth Circuit has held that "the test for position elimination is not whether the responsibilities were still performed, but rather whether the responsibilities still constituted a single, distinct position." *Furr v. Seagate Tech., Inc.*, 82 F.3d 980, 988 (10th Cir. 1996). Regardless of whether some of his work was transferred to piping engineers in other offices, Mr. Zou concedes that his responsibilities were transferred to multiple individuals. Dkt. 231 at 11. As a result, his position was no longer a single, distinct position. *See, e.g., Furr*, 82 F.3d at 988 (A position was not eliminated where the "former responsibilities were divided up and absorbed … and no new person took over [the employee's] former responsibilities."). Evidence simply does not support the conclusion that Linde lied when it stated that Mr. Zou's position was eliminated.

Mr. Zou next argues Mr. Duncan and Mr. Sharp "were not qualified for [the] piping engineer positions." Dkt. 231 at 11-12. It is not clear how this fact, even if true, would establish pretext. But whether Mr. Duncan and Mr. Sharp were qualified to perform the duties is not a determination for the Court to make, nor is it determinative of pretext in this context. The decision to divide Mr. Zou's position among several employees falls entirely under

No. 19-cv-554

Linde's discretion. *See Furr*, 82 F.3d at 986 ("[T]he manner in which a company chooses to conduct a RIF is within the company's sound business discretion ...."). The facts establish that the position was eliminated and the elimination does not demonstrate that Linde's proffered reasoning is pretextual.

5.

Mr. Zou also asserts that Linde had open engineering positions in the Tulsa office at the time of the RIF that Mr. Zou was qualified for, and Linde's failure to transfer him to those positions demonstrates that the RIF was pretext for his termination. Dkt. 231 at 12-13. Linde maintains that it was not required to find a new position for Mr. Zou in lieu of terminating his employment. Dkt. 235 at 10. In *Eke v. CaridianBCT, Inc.*, the plaintiff argued that her former employer's failure to find her another position in the company instead of laying her off demonstrated pretext. 490 F. App'x 156, 166 (10th Cir. 2012). The Tenth Circuit rejected her argument, finding that there was "no evidence that the company's RIF selection process directed the decision makers to find alternate positions for employees whose jobs were ... eliminat[ed]" and plaintiff "cite[d] no authority supporting her proposition that an employer's failure to consider placing an employee in another job before terminating her employment is evidence of pretext." *Id.* at 166 n. 8. Likewise here, Mr. Zou has provided no evidence that Linde was required to find the employees selected for the RIF an alternative position or cite to any authority requiring Linde to do so in effectuating the RIF. Accordingly, the Court rejects Mr. Zou's argument and finds that a reasonable jury could not conclude that Linde's failure to offer Mr. Zou another vacant engineering position is evidence of pretext.

6.

Finally, Mr. Zou makes an overarching argument that Linde's proffered reasoning is pretext because every employee laid off under Mr. Gump was over the age of forty [Dkt. 231 at 15], tenure was not a listed reason for

No. 19-cv-554

the RIF on the original separation agreement [Dkt. 241 at 4], and Linde did not ultimately change its focus away from natural gas [*Id.* at 8]. Linde responds that it terminated eighteen of fifty-four employees from the Tulsa office in August of 2019 and the remaining employees ranged in age from twenty-seven to seventy-one. Dkt. 232-1 at 6 (¶ 25). Further, twelve of the retained employees were older than Mr. Zou and only two of the seven Asians in the Tulsa office were included in the RIF. *Id.*

Mr. Zou asks the Court to focus solely on the employees terminated under Mr. Gump rather than the RIF in its entirety. "Statistics taken in isolation are generally not probative of ... discrimination." *Jones v. Unisys Corp.*, 54 F.3d 624, 632 (10th Cir. 1995). "At the very least, in order to create an inference of pretext, 'a plaintiff's statistical evidence must focus on eliminating nondiscriminatory explanations for the disparate treatment by showing disparate treatment between *comparable* individuals.'" *Timmerman v. U.S. Bank, N.A.*, 483 F.3d 1106, 1115 (10th Cir. 2007) (quoting *Fallis v. Kerr-McGee Corp.*, 944 F.2d 743, 746 (10th Cir. 1991)). Thus, "[s]tatistical evidence that does not adjust for the various performance evaluations and departmental rankings of the employees included in the statistical pool" is insufficient to establish pretext. *See Pippin v. Burlington Res. Oil & Gas Co.*, 440 F.3d 1186, 1197-98 (10th Cir. 2006) (citation and quotation marks omitted). Mr. Zou's statistical evidence does not account for nondiscriminatory explanations for the disparity, such as "differences in various individuals' job performance, experience, and training." *Sanders v. Sw. Bell Tel., L.P.*, 544 F.3d 1101, 1110 (10th Cir. 2008). Without accounting for these variables, Mr. Zou's evidence fails to suggest pretext. *See Rea v. Martin Marietta Corp.*, 29 F.3d 1450, 1456 (10th Cir. 1994) ("Plaintiff's statistical evidence compares only the ages of employees retained with the ages of those laid off.... Plaintiff's statistical evidence fails to eliminate nondiscriminatory explanations for disparate treatment—*i.e.*, that those laid off had lower performance evaluations and rankings than those retained—and therefore does not permit an inference of pretext.").

Looking now to the separation agreement, it stated that the RIF was "due to a change in [Linde's] business direction … as well as the current market conditions and expected work load …." Dkt. 236 at 65. The agreement further states that individuals were selected for the RIF based on "job elimination, job function, critical skills, performance, abilities, effectiveness, versatility, value to continuing business operations, uniqueness, and reassignment potential." Dkt. 236 at 72. Mr. Zou takes issue with the fact that tenure was not specifically listed in the agreement as a selection criterion. Dkt. 241 at 4. But "[p]roviding additional justifications for termination without abandoning the primary reason for termination does not, without more, establish pretext." *Litzsinger v. Adams Cnty. Coroner's Office*, 25 F.4th 1280, 1293 (10th Cir. 2022). "To support an inference of pretext, the additional justifications must 'suggest dishonesty or bad faith.'" *Id.* (quoting *Twigg v. Hawker Beechcraft Corp.*, 659 F.3d 987, 1002 (10th Cir. 2011)). Linde's supposedly additional reasoning—tenure—is entirely in line with and could fall under any number of the criteria listed in the separation agreement. Mr. Zou has failed to provide evidence that this additional reason suggests dishonesty or bad faith by Linde.

Mr. Zou also argues that Linde did not actually change its business focus, as offered in the separation agreement. Dkt. 241 at 8-9. When assessing Linde's proffered reason for the RIF,

> the relevant … inquiry is whether the employer's stated reasons were held in good faith at the time of the discharge, even if they later prove to be untrue, or whether plaintiff can show that the employer's explanation was so weak, implausible, inconsistent or incoherent that a reasonable fact finder could conclude that it was not an honestly held belief but rather was subterfuge for discrimination.

*Young v. Dillon Cos.*, 468 F.3d 1243, 1250 (10th Cir. 2006) (citing *Rivera v. City & Cty. of Denver*, 365 F.3d 912, 924-25 (10th Cir. 2004)). At the time of the RIF, Linde indicated to its employees that it was shifting its business

15

direction. Dkt. 236 at 65. Less than a year after Mr. Zou's termination, Mr. Duncan and Mr. Sharp, who worked in the same department as Mr. Zou, were also laid off. Dkt. 232-1 at 6 (¶ 27). And the Tulsa office ultimately closed in October of 2021. *Id.* at 6 (¶ 28). This evidence certainly suggests that Linde intended to make significant changes to the Tulsa office and ultimately followed through with those plans. Mr. Zou has provided no evidence which suggests that Linde did not intend to shift its business direction at the time of the original RIF which led to Mr. Zou's termination.

For these reasons, the Court finds that Mr. Zou has not presented sufficient evidence for a jury to find that Linde's proffered non-discriminatory reason for his lay off was pretextual. Thus, Linde's motion for summary judgment on Mr. Zou's Title VII and ADEA discrimination claims is granted and Mr. Zou's motion is denied.

### B.

The parties next argue that they are entitled to summary judgment on Mr. Zou's claim for unlawful retaliation in violation of both Title VII and the ADEA. Mr. Zou claims that he was retaliated against when he was required to work overtime, and again when Linde decided to include him in the RIF. The retaliation claim, like Mr. Zou's Title VII and ADEA claims, is subject to the *McDonnell Douglas* burden-shifting framework: Mr. Zou must first set forth a prima facie case of retaliation by showing that (1) he engaged in protected opposition to discrimination, which (2) resulted in a materially adverse employment action that (3) was causally connected to the protected activity. *Somoza v. Univ. of Denver*, 513 F.3d 1206, 1211 (10th Cir. 2008).

The Tenth Circuit has stated that "[a]lthough no magic words are required, to qualify as protected opposition the employee must convey to the employer his or her concern that the employer has engaged in a practice made unlawful by [Title VII or the ADEA]. General complaints about company management … will not suffice." *Hinds v. Sprint/United Mgmt. Co.*, 523 F.3d 1187, 1203 (10th Cir. 2008) (citations omitted); *see also Peterson v. Utah Dept.*

*of Corrections*, 301 F.3d 1182, 1188 (10th Cir. 2002) ("[A]n employee cannot engage in unlawful retaliation if it does not know that the employee has opposed or is opposing a violation of Title VII."). The employee must notify the employer that the complained of action is unlawful. *See Kawahara v. Guaranty Bank & Trust*, 835 F. App'x 386, 390 (10th Cir. 2020).

In Mr. Zou's letter to HR, he makes various complaints about Mr. Gump and Linde's practices. Dkt. 231 at 45-47. The only complaints which pertain to disparate treatment are that he was not included in meetings, that Mr. Gump allowed Mr. Sharp to perform some of his duties, and that Mr. Gump asked Mr. Zou's roommate to search his room. *Id.* But Mr. Zou does not attribute any of Mr. Gump's alleged disparate treatment to the fact that he is Asian or over the age of forty. The letter does not contain any information that would indicate to HR that Mr. Zou believed a Title VII or ADEA violation had occurred. Viewing the evidence in the light most favorable to Mr. Zou, the Court finds that Mr. Zou has not shown that he engaged in any protected activity before he was laid off. Thus, Mr. Zou cannot establish a prima facie claim of retaliation.

Even if Mr. Zou could establish a prima facie case of retaliation, he could not establish that Linde's reason was pretextual. Mr. Zou uses the same arguments for this claim to attack Linde's non-retaliatory reason for its action—the RIF. These arguments fail for the same reasons as those discussed earlier. Plaintiff also argues that the length of time between the complaint and the RIF—three months—is sufficient evidence to show that Linde's reason is pretextual. Had Linde singled out Mr. Zou, this timing might have provided sufficient evidence for a jury to find that Linde's reasoning was pretextual. But Mr. Zou was one of eighteen employees laid off in the context of a RIF. *See, e.g., Cruces v. Int'l Down & Feather Testing Laboratory*, 956 F. Supp. 2d 1299, 1316-17 (D. Utah 2013) (holding that defendant's reason for a reduction in hours was not pretextual, even though it occurred "shortly after" protected activity, because the plaintiff was not "singled out" and the reduction

No. 19-cv-554

was "in the context of a RIF after applying objective criteria"). And eventually, Linde closed the Tulsa office. Mr. Zou has provided no evidence that the complaint was causally related to the RIF. Accordingly, Linde is entitled to summary judgment as to Mr. Zou's retaliation claim. Mr. Zou's motion for summary judgment is denied.

IV.

The Court concludes that there are no disputed questions with respect to the facts relevant to resolve Mr. Zou's claims. Accordingly, Linde is entitled to judgment in its favor. Mr. Zou's motion for summary judgment [Dkt. 231] is denied and Linde's motion for summary judgment [Dkt. 232] is granted. The Court will enter judgment accordingly.

DATED this 21st day of January 2025.

JOHN D. RUSSELL
*United States District Judge*